UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X

GLENN DAVID MORGAN,

                    *Plaintiff*,

                                          **MEMORANDUM AND ORDER**
        -against-                         20-CV-04554 (KAM)


COMMISSIONER OF SOCIAL SECURITY,

                    *Defendant*.

---------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

        Plaintiff Glenn Morgan ("Plaintiff") appeals the final
decision of the Commissioner of Social Security ("defendant"),
which found Plaintiff not disabled and thus not entitled to
disability insurance benefits ("DIB") under sections 216(i) and
223(d) of the Social Security Act ("the Act").

        Presently before the court is plaintiff's motion for
judgment on the pleadings and memorandum of law, (ECF No. 15,
Plaintiff's Motion for Judgment on the Pleadings; ECF No. 15-1,
Memorandum in Support of Motion for Judgment on the Pleadings
("Pl. Mem.")), defendant's cross-motion for judgement on the
pleadings and memorandum of law, (ECF No. 16, Cross-Motion for
Judgment on the Pleadings; ECF No. 16-1 Memorandum in Support of
Cross-Motion for Judgment on the Pleadings ("Def. Mem.")), and

plaintiff's reply memorandum of law in support of plaintiff's motion for judgment on the pleadings, (ECF No. 17, (Pl. Reply").) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is respectfully DENIED and the Commissioner's motion for judgment on the pleadings is GRANTED.

## BACKGROUND

The parties submitted a Joint Stipulation of Facts detailing Plaintiff's medical history and the administrative hearing testimony, which the court hereby incorporates by reference. (*See* ECF No. 16-2, Joint Stipulation of Facts ("Stip.").)

Plaintiff was born on September 24, 1961. (ECF No. 18, Administrative Transcript ("Tr.") at 248.) Plaintiff worked as a "patient navigator", transporting patients within Northwell Health Long Island Jewish Hospital in Queens, New York from 1984 to 2018. (*Id.* at 261.) Plaintiff filed an application for DIB on June 4, 2018, alleging a disability beginning May 2, 2018. (ECF No. 18, Administrative Transcript ("Tr.") 173-76.) Plaintiff alleged impairments from schizoaffective disorder bipolar type, memory problems, anxiety and depression, poverty of speech, and hand tremors or shaking. (*Id.* at 211.) Plaintiff's claims were denied on October 3, 2018. (*Id.* at 83-88.) On November 1, 2018, plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 91-92.)

Plaintiff's hearing took place before ALJ Gloria Pellegrino on September 4, 2019. (*Id.* at 34-66.) Plaintiff appeared and testified from Jamaica, New York, and was represented by his attorney, John Moran. (*Id.*) The ALJ, vocational expert, and Plaintiff's wife Dinah Morgan were also present and testified. (*Id.*)

On October 18, 2019, the ALJ found that Plaintiff was not disabled under the Social Security Act. (*Id.* at 7-27.) On November 15, 2019, plaintiff requested review of the ALJ's decision (*id.* at 161-67), which the Appeals Council denied on July 25, 2020, thus making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-6.) This appeal followed. (*See generally* ECF No. 1, Complaint ("Compl.").)

## **LEGAL STANDARD**

A claimant must be "disabled" within the meaning of the Act to receive disability benefits. *See* 42 U.S.C. §§ 423(a), (d). A claimant qualifies as disabled when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000). The impairment must be of "such severity" that the claimant is unable to do [his] previous work or engage

in any other kind of substantial gainful work.  42 U.S.C. §
423(d)(2)(A).

The regulations promulgated by the Commissioner
prescribe a five-step sequential evaluation process for
determining whether a claimant meets the Act's definition of
disabled.  *See* 20 C.F.R. § 404.1520.  The Commissioner's process
is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant
> is not working, (2) that [s]he has a 'severe impairment,'
> (3) that the impairment is not one [listed in Appendix
> 1 of the regulations] that conclusively requires a
> determination of disability, and (4) that the claimant
> is not capable of continuing in [her] prior type of work,
> the Commissioner must find [her] disabled if (5) there
> is not another type of work the claimant can do.

*Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008) (quoting
*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003));
*accord* 20 C.F.R. § 404.1520(a)(4).  If the ALJ determines that
the claimant is or is not disabled at any step, the analysis
stops.

"The claimant has the general burden of proving . . .
his or her case at steps one through four of the sequential
five-step framework established in the SSA regulations."
*Burgess*, 537 F.3d at 128 (internal quotation marks and citations
omitted).  "However, [b]ecause a hearing on disability benefits
is a nonadversarial proceeding, the ALJ generally has an
affirmative obligation to develop the administrative record."

4

*Id.* (internal quotation marks omitted). "The burden falls upon the Commissioner at the fifth step of the disability evaluation process to prove that the claimant, if unable to perform [her] past relevant work [and considering her residual functional capacity, age, education, and work experience], is able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

"The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)). If the Commissioner finds a combination of impairments, the Commissioner must also consider whether "the combined effect of all of [a claimant's] impairment[s]" establish the claimant's eligibility for Social Security benefits. 20 C.F.R. § 404.1523(c); *see also id.* § 416.945(a)(2).

Unsuccessful claimants for disability benefits may bring an action in federal court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. §§ 405(g), 1383(c)(3). The reviewing court does not have the authority to

conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r*, 692 F.3d 118, 122 (2d Cir. 2012). Rather, "[a] district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error.'" *Burgess*, 537 F.3d at 127 (quoting *Shaw*, 221 F.3d at 131 (citation omitted)).

"The substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citations omitted, emphasis in original). Inquiry into legal error requires the court to ask whether "'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

## THE ALJ'S DISABILITY DETERMINATION

Using the five-step sequential process to determine whether a claimant is disabled as mandated by the SSA regulations, the ALJ made the following determinations.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of May 2, 2018. (Tr. 12.) At step two, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease, cardiac disease, obesity, cataracts in both eyes, amblyopia, speech impediment, schizoaffective disorder, bipolar, anxiety, and depression. (*Id.* at 13.) The ALJ noted her finding that Plaintiff's hand tremors were non-severe because a transcranial Doppler revealed normal direction and resistance of flow and no evidence of stenosis in the anterior or posterior circulations; Plaintiff's neurology consult suggested no edema, clubbing, or cyanosis in his upper extremities; and he showed full strength in all upper extremity muscle groups with no resting tremor. (*Id.*)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (*Id.*) Specifically, the ALJ considered Plaintiff's impairments under listings 1.04 (disorders of the spine), 2.02, 2.03, and 2.04 (visual impairments), 4.00, 4.02, 4.04, 4.05, 4.06, 4.09, 4.10, 4.11, and 4.12 (cardiovascular impairments), 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 (depressive,

bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). (*Id.* at 13-14.)

The ALJ determined as follows. Plaintiff did not meet listing 1.04 because the medical evidence did not indicate nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis, and because Plaintiff could ambulate effectively. (*Id.* at 13.) Plaintiff did not meet listings 2.02, 2.03, or 2.04 as the medical evidence did not demonstrate vision after best correction of 20/200 or less, a visual field with the widest diameter subtending an angle around the point of fixation to be no greater than 20 degrees, an MD of 22 decibels or greater, a visual efficiency of 20 percent or less after correction, or an impairment valued at 1.00 or greater after best correction. (*Id.*) Plaintiff's cardiovascular impairments did not meet or medically equal the considered cardiovascular impairments. (*Id.*) Plaintiff did not meet listing 12.03, 12.04 or 12.06 because he had only moderate limitations in understanding, remembering, and applying information, in interacting with others, and in concentrating, persisting, and maintaining pace, and mild limitations in adapting and managing himself—as opposed to marked or extreme limitations in these areas of functioning. (*Id.* at 14-15.) Moreover, there was no evidence that Plaintiff had only a marginal capacity to adapt to changes in his environment. (*Id.* at 15.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work. (*Id.*) To this RFC, the ALJ added several exertional limitations, including that Plaintiff cannot perform work that requires fine visual acuity, depth perception, peripheral vision, or color perception, though he retains sufficient visual acuity to read large print (14-point font or larger), work with large objects, and avoid workplace hazards. (*Id.*) Plaintiff also cannot be exposed to hazards, such as dangerous moving machinery or unprotected heights. (*Id.*) The ALJ also added several non-exertional limitations, including performing simple, routine, and repetitive tasks and only occasional contact with the public. (*Id.*) Based upon the RFC finding, the ALJ determined that Plaintiff was incapable of performing his past relevant work as a transporter, or hospital navigator. (*Id.* at 21.)

At step five, the ALJ concluded that given Plaintiff's age, education, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. (*Id.*) The ALJ supplied the vocational expert with the above information, who determined that Plaintiff could perform the requirements of representative occupations like hospital cleaner and order runner. (*Id.* at 22.) The ALJ thus concluded that Plaintiff was not disabled within the meaning of the Act. (*Id.*)

**DISCUSSION**

Plaintiff contends that the ALJ failed to properly evaluate the medical opinion evidence and failed to properly evaluate the subjective statements of Plaintiff and his wife. (ECF No. 15, Plaintiff's Memorandum ("Pl. Mem."), at 1-16.)

I. **Weighing of Medical Opinion Evidence**

A. **New Regulations Regarding Evaluation of Medical Opinion Evidence**

Previously, the SSA followed the "treating physician rule," which required the agency to give controlling weight to a treating source's opinion, so long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2). The 2017 regulations changed this standard for DIB applications filed "on or after March 27, 2017." *Id*. § 404.927. As Plaintiff's claim was filed on June 4, 2018, the new regulations apply to this action. (Tr. 173-76.)

Pursuant to the new regulations, the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, when evaluating the persuasiveness of medical opinions,

the Commissioner will consider the following five factors: (1) supportability; (2) consistency; (3) relationship of the source with the claimant, including length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and whether the relationship is an examining relationship; (4) the medical source's specialization; and (5) other factors, including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." *Id.* § 404.1520c(c)(5).

The most important factors of a medical opinion in evaluating persuasiveness are supportability and consistency. *Id.* § 404.1520c(a). With respect to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or

prior administrative medical finding(s) will be." *Id*.
§ 404.1520c(c)(2).

The ALJ must articulate her consideration of the
medical opinion evidence, including how persuasive she finds the
medical opinions in the case record. *Id*. at § 404.1520c(b).
"Although the new regulations eliminate the perceived hierarchy
of medical sources, deference to specific medical opinions, and
assigning 'weight' to a medical opinion, the ALJ must still
articulate how [he or she] considered the medical opinions and
how persuasive [he or she] find[s] all of the medical opinions."
*Andrew G. v. Comm'r of Soc. Sec.*, No. 19-cv-0942 (ML), 2020 WL
5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation
omitted). Specifically, the ALJ must explain how she considered
the "supportability" and "consistency" factors for a medical
source's opinion. 20 C.F.R. §§ 404.1520c(b)(2). The ALJ may,
but is not required to, explain how she considered the remaining
factors. *Id*. When the opinions offered by two or more medical
sources about the same issue are "both equally well-supported
... and consistent with the record ... but are not exactly the
same," however, the ALJ shall articulate how he considered the
remaining factors in evaluating the opinions. 20 C.F.R.
§ 404.1520c(b)(3).

> Even though ALJs are no longer directed to afford
> controlling weight to treating source opinions—no matter
> how well supported and consistent with the record they

may be—the regulations still recognize the "foundational nature" of the observations of treating sources, and "consistency with those observations is a factor in determining the value of any [treating source's] opinion."

*Soto v. Comm'r of Soc. Sec.*, No. 19-cv-4631 (PKC), 2020 WL 5820566 (E.D.N.Y. Sept. 30, 2020) (quoting *Shawn H. v. Comm'r of Soc. Sec.*, No. 19-cv-113 (JMC), 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (quoting *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018))).

### B. The ALJ's Assessment of Opinion Evidence

The ALJ discussed the medical opinion evidence offered by six medical professionals, including the opinions offered by Daniel Powsner, M.D., Gladys Frankel, Ph.D., Alicia Dee, N.P.[1], Robert Rahmani, M.D., Arelio Salon, M.D., and Howard Pomeranz, M.D., along with several State agency medical consultants.[2] (Tr. 18-20.) Plaintiff does not challenge the ALJ's assessment of the State medical consultants;[3] accordingly, the Court will focus the analysis on the ALJ's assessment of the opinions offered by the named medical professionals.

---

[1] Under the new regulations, Nurse Practitioner Dee is considered an "[a]cceptable medical source." *See* 20 C.F.R. § 416.902(a) (defining acceptable medical sources to include a "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice").
[2] The ALJ also considered evidence from Jeannine Gutierrez, O.D., which she describes as an "opinion," but Plaintiff contests is not an opinion as it does not address Plaintiff's abilities or limitations with regard to work. (Tr. 18; Pl. Mem. at 9.)
[3] The ALJ found each of the state agency medical consultants, who were limited to reviewing of the medical evidence and did not examine Plaintiff, to be unpersuasive. (Tr. 19-20.)

*i.  Dr. Powsner*

Dr. Powsner is a board-certified psychiatrist who treated Plaintiff for schizoaffective disorder, bipolar type for several years. (Stip. at 2, Tr. 310-64.)  The record indicates that Dr. Powsner first saw Plaintiff in 2005. (Tr. 362.)  He submitted treatment notes from December 2015 to July 2019. (Stip. at 2-10, Tr. 310-497.)

Dr. Powsner completed at "Psychiatric/Psychological Impairment Questionnaire" on August 16, 2019. (Tr. 520-24.) Dr. Powsner reported Plaintiff had been treated monthly since May 1997 for schizoaffective disorder. (*Id.* at 520.)  Dr. Powsner predicted that Plaintiff's diagnoses and limitations were expected to last at least 12 months and that he was not a malingerer. (*Id.* at 521.)

Dr. Powsner's opined that Plaintiff had numerous marked limitations in understanding and memory, concentration and persistence, social interaction, and adaptation categories. (*Id.* at 523.)  He commented that "[a]fter sustaining employment for many years, in past year [Plaintiff] has seemed confused at the job, has difficulty following directions, & on at least one occasion got into a physical altercation with a coworker." (*Id.* at 522.)  Dr. Powsner also explained that Plaintiff can be an "unreliable historian" due to psychiatric illness and that he relied on collateral information from Plaintiff's wife. (*Id.*)

The ALJ found Dr. Powsner's opinion was "not persuasive" because it was unsupported or inconsistent with the medical evidence on the record. (Tr. 20.) The ALJ discussed specific evidence in the record which was not consistent with Dr. Powsner's opinion, drawing from his treatment notes that Plaintiff showed largely normal mental status examinations in May 2018, September 2018, November 2018, and July 2019. (*Id.* at 17.) She also noted reported attention/concentration improvement in November 2018 after a deficit in September and July as well as a normal attention/concentration report in July 2019. (*Id.*) The ALJ also observed evidence that Plaintiff sees Dr. Powsner only once a month and with his current medication had no apparent psychotic symptoms. (*Id.*)

### ii. Dr. Frankel

Dr. Frankel completed a consultative psychiatric evaluation on August 23, 2018. (Tr. 377-81). She described Plaintiff's job as a patient navigator and his experiences of "mental health problems, memory problems, concentration problems," "more pressure, saying he is too slow," and feeling "computer illiterate." (*Id.* at 377.) Regarding "Current Functioning" Dr. Frankel noted that Plaintiff rated his depression as 4/10 (10 being the worst) and that "[d]epression is because of being out of work," pain, and diminished sense of pleasure. (*Id.* at 378.) During the examination, Plaintiff's

thought process was described as "coherent and goal directed," affect was euthymic, and insight and judgment were fair. (*Id.* at 379.) Attention and concentration were essentially intact, but Dr. Frankel reported plaintiff's simple calculations as: "5 x 2 = 10, 3 x 4 = 9" and when serials 7s were administered, Plaintiff "said 93 and then 85, 79, 72, and 65." (*Id.*) Recent and remote memory skills were found to be "mildly impaired." (*Id.*) Plaintiff was able to recount 1 out of 3 objects after a delay and showed evidence of impaired concentration. (*Id.*) Dr. Frankel also noted that Plaintiff dressed, bathed, and groomed independently, could cook, clean, do laundry, shop, manage money, and take public transportation, and occasionally roller skated and bowled. (*Id.*)

Dr. Frankel opined that there were no limitations for understanding, remembering, or applying simple and complex directions and instructions; using reason and judgment to make work-related decisions; interacting adequately with supervisors, coworkers, and the public; sustaining an ordinary routine and regular attendance at work; regulating emotions, controlling behaviors, and maintaining well-being; maintaining personal hygiene and appropriate attire; and being aware of normal hazards and taking appropriate precautions; but that there were moderate limitations for sustaining concentration and performing a task at a consistent pace. (*Id.* at 380.) She also expected

the duration of the impairment and time frame for suggested
therapy to last more than one year.  (*Id.*)

The ALJ found Dr. Frankel's opinion "highly
persuasive," because it was supported by a clinical examination
and consistent with the totality of the evidence.  (*Id.* at 18-
19).  The ALJ specifically cited the apparent improvement in
plaintiff's concentration and attention as reported by Dr.
Powsner in November 2018.  (*Id.* at 19, 420.)

### iii. Nurse Practitioner Dee

NP Dee completed a "Multiple Impairment Questionnaire"
and a "Stroke Impairment Questionnaire" on August 21, 2019. (Tr.
575-80).  NP Dee began treating Plaintiff in December of 2018
and saw him every three to four months.  (*Id.* at 570.)  She
listed PCA infracts, R homonymous hemianopia, and tremors as
diagnoses which she considered chronic.  (*Id.* at 575.)  NP Dee
identified tremor, R homonymous hemianopia, increased tone at
rest, and cogwheel rigidity with movement as positive clinical
findings.  (*Id.* at 576.)  Within a normal, competitive work
environment, NP Dee determined that Plaintiff could sit and
stand intermittently for an hour only and lift or carry up to
ten pounds occasionally, but that he could tolerate low work
stress.  (*Id.* at 578-79.)  On average, she estimated Plaintiff
would be absent from work more than three times per month. (*Id.*
at 579).

The ALJ found unpersuasive NP Dee's opinion that Plaintiff could only occasionally lift and carry up to 10 pounds and would need to take substantial unscheduled breaks and absences. (*Id.* at 20.) As the ALJ considered the described limitations to be severe, she found they were not supported by objective evidence and were inconsistent with other evidence on the record, such as an August 2018 examination finding 5/5 power in all muscle groups and no cogwheel rigidity. (*Id.* at 369.)

### iv. Dr. Rahmani

Dr. Rahmani is a board-certified internist with a specialty in cardiovascular disease. (Stip. at 13.) He completed a "Cardiac Impairment Questionnaire" on August 22, 2019. (Tr. 551-56). Dr. Rahmani first treated Plaintiff in April 2019, seeing him every three months. (*Id.* at 551.) Dr. Rahmani did not diagnose Plaintiff with coronary artery disease or congestive heart failure, but he noted Plaintiff had experienced a cardiovascular accident and experienced fatigue, weakness, unsteady gait, and frequent leg pain. (*Id.* at 550-52.) Within a normal, competitive work environment, Dr. Rahmani opined Plaintiff could work while seated or standing less than one hour per day. (*Id.* at 553.) He reported that Plaintiff could occasionally lift up to ten pounds. (*Id.*) Dr. Rahmani indicated that Plaintiff had not undergone any corrective cardiac procedures, but that he has an internal loop recorder.

18

(*Id*. at 554.)  On average, he estimated Plaintiff would be absent from work more than three times per month. (*Id*. at 555).

The ALJ found unpersuasive Dr. Rahmani's opinion regarding plaintiff's breaks, absences, and lifting limitations. (*Id*. at 20.)  The ALJ found these severe limitations to be unsupported by the objective evidence and inconsistent with Dr. Rahmani's own findings from his May 2019 visit and report which showed a normal pharmacologic stress nuclear study, a normal single-photon emission computed tomography ("SPECT") perfusion imaging, and normal left ventricular systolic function, as well as no evidence of arterial occlusive disease in the lower extremities after an arterial duplex.  (*Id*. at 449-50.)

### v.   Dr. Salon

Dr. Salon conducted a consultive internal medicine examination on in August 2018.  (Tr. 382-85).  Dr. Salon described Plaintiff's daily activities, including cooking, cleaning, doing laundry, and shopping, as well as showering and dressing independently.  (*Id*. at 383.)  During the examination, plaintiff's gait was normal and he could walk on his heels and toes without difficulty, squat fully, and get on and off the exam table without assistance.  (*Id*.)  Dr. Salon noted dependent fine tremors, but that hand and finger dexterity was intact with 5/5 bilateral grip strength.  (*Id*. at 384.)  In his source statement, Dr. Salon opined that there were no objective

19

findings to support restrictions in sitting, standing, climbing, pushing, pulling, or carrying heavy objects. (*Id*. at 385.)

The ALJ found that Dr. Salon's opinion that there were no objective findings to support a physical activity limitation to be "highly persuasive," because it was supported by a clinical examination and consistent with the totality of the evidence. (*Id*. at 19). The ALJ noted the spine x-ray finding of minimal degenerative change and the exam demonstrating full flexion, as well as several instances throughout Plaintiff's treatment history where his gait was reported to be normal. (*Id*.)

### vi. Dr. Pomeranz

Dr. Pomeranz is a board-certified ophthalmologist. (Stip. at 12.) He first treated Plaintiff in January 2019. (Tr. 514.) In a "Vision Impairment Questionnaire" completed August 16, 2019, Dr. Pomeranz diagnosed Plaintiff with right homonymous hemianopsia, left eye amblyopia, rotatory nystagmus, and bilateral cataracts which he deemed "not likely to improve." (*Id*.) He opined that Plaintiff would be unable to perform tasks that required normal peripheral vision and depth perception, but that Plaintiff could read normal sized print and work with large objects. (*Id*. at 517.) Dr. Pomeranz also indicated that Plaintiff had significant limitations processing visual information like computer screens, moving print, etc., avoiding

normal work hazards, walking on uneven terrain, and working with small objects like keyboards, coins, or labels.  (*Id.*)

The ALJ found Dr. Pomeranz's opinion regarding Plaintiff's inability to perform tasks requiring normal peripheral vision and depth perception to be highly persuasive. (*Id.* at 18.)  She found these limitations to be supported by clinical examination findings and evidence from a consultative examiner who also found right hemianopsia and amblyopia, among other defects.  (*Id.* at 18, 372-76.)

## C. Analysis

The Court has reviewed the medical evidence in the record, including the aforementioned opinions, as well as the ALJ's decision, and finds that the ALJ properly weighed the medical evidence in the record, and her assessment of the RFC based on this evidence is supported by substantial evidence.  As required by the new regulations, the ALJ explained her findings regarding the supportability and consistency for each of the opinions, pointing to specific evidence in the record supporting those findings.  *See Raymond M. v. Comm'r of Soc. Sec.*, No. 19-cv-1313 (ATB), 2021 WL 706645 (N.D.N.Y. Feb. 22, 2021) ("At their most basic, the amended regulations require that the ALJ explain her findings regarding the supportability and consistency for each of the medical opinions, 'pointing to

specific evidence in the record supporting those findings.'")
(citation omitted.)

The ALJ found that the opinion regarding psychiatric
impairments offered by Dr. Frankel was better supported and more
consistent with the evidence than the opinion offered by Dr.
Powsner.  Similarly, regarding physical restrictions, the ALJ
found the opinion of Dr. Salon more persuasive than those of NP
Dee and Dr. Rahmani which she found to be unsupported and
inconsistent with objective evidence.  As explained above, the
new regulations eliminate the "treating physician rule," and the
opinion of a consultative examiner may override the opinion of a
treating physician, particularly where the opinion of the
consultative examiner is better supported by the record.  *See*
*Jacqueline L. v. Comm'r of Soc. Sec.*, No. 19-cv-06786 (EAW),
2021 WL 243099 (W.D.N.Y. Jan. 26, 2021) (citing *Netter v.*
*Astrue*, 272 F. App'x 54, 55-56 (2d Cir. 2008)).  Accordingly,
the ALJ's evaluation of plaintiff's psychiatric issues was
supported by substantial evidence.

Plaintiff further contends the relative persuasiveness
of the psychiatric opinions were erroneous because the ALJ
"relied entirely" on Dr. Frankel's opinion based on a one-time
examination instead of Dr. Powsner's long-term treating source
opinion.  (Pl. Mem. at 7.)  As explained by the ALJ, however,
she considered the opinions in light of the totality of the

evidence, including the contemporaneous observations of a
treating source, the treatment notes of Dr. Powsner, to
determine that Dr. Frankel's opinion was more consistent with
the objective evidence.  (Tr. 18.)  Even if the treating
physician rule did apply in this instance, courts in this
circuit have found that inconsistency between the treating
physician's assessment of severe limitations and treatment notes
can support the ALJ's decision to give less weight to the
treating physician's opinion.  *See e.g.*, *Pagan v. Colvin*, No.
15-cv-3117 (HBP), 2016 WL 5468331, at *13 (S.D.N.Y. Sept, 29,
2016) ("[T]he ALJ provided good reasons for affording 'little
weight' to [the treating psychiatrist's] opinion, namely that it
was unsupported by [the treating psychiatrist's] own treatment
notes, which showed that plaintiff had overall normal mental
status examinations and there was general improvement in
plaintiff's mood and anxiety over the course of treatment.");
*Ayala v. Berryhill*, No. 18-cv-124 (VB) (LMS), 2019 WL 1427398,
at *9 (S.D.N.Y. Mar. 12, 2019) *report and recommendation adopted
sub nom. Ayala v. Comm'r of Soc. Sec. Admin.*, No. 18-cv-124
(VB), 2019 WL 1417220 (S.D.N.Y. Mar. 29, 2019) ("An ALJ can also
decline to give controlling weight to a treating physician's
opinion where contemporaneous treatment records, including the
plaintiff's largely normal mental status examinations on both
treating and consultative evaluations, did not support such

severe limitations" (internal quotation marks omitted)); *Camille*
*v. Berryhill*, No. 17-cv-01283 (SALM), 2018 WL 3599736, at *11
(D. Conn. July 27, 2018) (finding that the ALJ did not err in
according less than controlling weight to an opinion when the
record "largely reflect[ed] normal mental status examinations,
including intact thought processes and minimal impairment in
both judgment and insight").

 Plaintiff next argues that the ALJ should not have
relied on Dr. Frankel's opinion because Dr. Frankel did not
review Plaintiff's treatment notes. (Pl. Mem. at 8.) The
regulations do require that a consulting physician be provided
with "any necessary background information about [a claimant's]
condition." 20 C.F.R. § 404.1517. But as this court has
previously explained, "this language does not amount to a
requirement that every consulting physician be provided with all
of a claimant's medical records and history." *Johnson v.*
*Colvin*, No. 13-cv-3745 (KAM), 2015 WL 6738900, at *15 (E.D.N.Y.
Nov. 4, 2015), *aff'd sub nom. Johnson v. Comm'r of Soc. Sec.*,
669 F. App'x 580 (2d Cir. 2016; *see also Genovese v. Astrue*, No.
11-cv-02054 (KAM), 2012 WL 4960355, at *18 (E.D.N.Y. Oct. 17,
2012) ("The SSA's statement that an examiner must be given
'necessary background information about [a claimant's]
condition,' 20 C.F.R. §§ 404.1517, 416.917, does not mandate
that 'the examiner must be provided with plaintiff's medical

records,' as plaintiff asserts it does.").  Moreover, although there is no indication in Dr. Frankel's report that she was provided background medical information about plaintiff, the ALJ did review the background medical information and found Dr. Frankel's opinion regarding plaintiff's concentration and attention appears to be consistent with the observations of Dr. Powsner regarding the plaintiff's improved mental status examinations.  (Tr. 18-20.)

In his August 2019 opinion, Dr. Powsner stated, *inter alia*, that Plaintiff was limited in most areas pertaining to memory, concentration, social interactions, and adaptation. (Tr. 523.)  In explaining why she found Dr. Powsner's opinion to be inconsistent with the record and not significantly persuasive, the ALJ pointed to specific evidence contradicting his opinion, including largely normal mental status examinations (*id.* at 348, 352, 390, 394, 403, 420, 476, 487, 491, 503), describing intact attention and concentration and minimal impairment in thought process, as well as indications of improvement after an approximately three-month period of greater impairment in memory and concentration (*id.* at 399, 407-08, 412, 416).  Moreover, in the mental status exam conducted by Dr. Frankel in August 2018 (during the period where Dr. Powsner's notes most consistently reflect impairment in memory and concentration), Plaintiff was found to have coherent though

process, essentially intact attention and concentration, and only "mildly impaired" memory. (*Id.* at 378-79.) *See Pawlak v. Saul*, No. 19-cv-165 (MJR), 2020 WL 3046204, at *6 (W.D.N.Y. June 8, 2020) (explaining that "[a]lthough the findings from Plaintiffs mental or psychiatric examinations supported some limitations, they did not support disabling restrictions"). Significantly, the RFC accounts for limitations assessed by Dr. Frankel and as reflected in Dr. Powsner's mental status examinations on the record, including that Plaintiff was limited to performing simple, routine, and repetitive tasks with only occasional contact with the public. (Tr. 20.)

Plaintiff also contends that the ALJ's RFC determination did not incorporate all findings from the opinion of Dr. Pomeranz nor did the ALJ articulate how persuasive she found these un-incorporated findings. (Pl. Mem. at 9; Pl. Reply at 3-4.) Plaintiff points to findings, indicated by checks on an impairment questionnaire, including that Plaintiff had significant limitations processing visual information (e.g., driving, moving print, patterns, computer screens, etc.); avoiding normal work hazards (e.g., wet floors, overhangs); walking on uneven terrain; and working with small objects (e.g., keyboard, coins, and labels). (Tr. 517.) The ALJ accommodated Plaintiff's visual impairments by limiting the RFC to occupations that do not require visual acuity, depth perception,

peripheral vision, color perception, or hazards such as dangerous moving machinery or unprotected heights, but noted, consistent with Dr. Pomeranz's opinion, that Plaintiff could read large print and work with large objects. (*Id.* at 15.) The explicit discrepancy is the ALJ's finding that Plaintiff retained sufficient visual acuity to avoid workplace hazards. (Tr. 15, 517.) Even if the ALJ's RFC finding is viewed as conflicting with Dr. Pomeranz's opinion, there would be no error because the remainder of the record supports the RFC determination. A consultative examination reported Plaintiff can cook, clean, do laundry, and shop by himself and had a corrected visual acuity of 20/25 in his better eye. (Tr. 372-73.)

Furthermore, the ALJ was not required to articulate how she considered each medical individual opinion or multiple medical findings from one medical source individually, 20 C.F.R. § 404.1520c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually"); nor is she required to accept wholesale all medical findings from a single medical opinion. *Fancher v. Comm'r of Soc. Sec.*, No. 19-cv-158 (KS), 2020 WL 5814359, at *5 (W.D.N.Y. Sept. 30, 2020) ("An ALJ is not required to adopt wholesale the opinion of any one medical source, but is entitled to weigh all of the evidence

available to make an RFC finding that is consistent with the record as a whole." (citing *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013))).

The ALJ also properly assessed the opinions offered by NP Dee, Dr. Rahmani, and Dr. Salon. As explained in the written determination, the ALJ found that NP Dee's opinion that Plaintiff had severe physical limitations and would require substantial breaks and absences was not supported by the record, nor was it consistent with objective evidence in the record, including Plaintiff's normal bulk and tone, 5/5 power strength in upper and lower extremities, and lack of edema, clubbing, or cyanosis. (Tr. 20, 384.) She similarly found Dr. Rahmani's opinion regarding severe limitations to be unsupported and inconsistent with objective evidence, such as the nuclear cardiology report showing a normal pharmacologic stress nuclear study, normal SPECT perfusion imaging, and normal left ventricular systolic function. (Tr. 20, 455.) Even if the treating physician rule did apply, "an ALJ 'may give greater weight to a consultative examiner's opinion than a treating physician's opinion if the consultative examiner's conclusions are more consistent with the underlying medical evidence.'" *Colon v. Saul*, No. 19-cv-1458 (PKC), 2020 WL 5764100, at *7 (E.D.N.Y. Sept. 28, 2020) (quoting *Mayor v. Colvin*, No. 15-cv-344 (AJP), 2015 WL 9166119, at *18 (S.D.N.Y. Dec. 17, 2015)

(collecting cases)). Thus, under the current regulations, the ALJ was permitted to give greater weight to the opinion of a consultative examiner, Dr. Salon, that there were no objective findings to support physical restrictions in Plaintiff's ability to sit, stand, climb, push, pull, or carry heavy objects. (Tr. 19, 385.)

In sum, the ALJ's assessment of the opinion evidence in the record was proper. Further, the ALJ's limiting Plaintiff to performing simple, routine, and repetitive tasks and occasional contact with the public; to occupations that do not require fine visual acuity, depth perception, peripheral vision, or color perception; and to have no exposure to hazards such as moving machinery or unprotected heights, is consistent with the medical evidence in the record. (Tr. 15.) The RFC is supported by the opinions of Drs. Frankel, Salon, and Pomerantz, as well as the objective evidence on the record. The ALJ accepted the supportability and consistency of each opinion. (*Id*. at 18-20.) Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 25, 29 (2d Cir. 2018) (summary order) (internal citations, italics, and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (summary

order) (the deferential standard of review prevents a court from reweighing evidence). Accordingly, remand is not appropriate on this basis.

## II. The ALJ's Assessment of Credibility

"It is the function of the [Commissioner], not [the reviewing court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (citations omitted). The ALJ, "after weighing objective medical evidence, the claimant's demeanor, and other indicia of credibility ... may decide to discredit the claimant's subjective estimation of the degree of impairment." *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999). An ALJ evaluating a claimant's subjective complaints of his symptoms must first decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce her pain or other symptoms alleged. 20 C.F.R. § 404.1529(c)(1). Second, the ALJ must evaluate the intensity and persistence of the claimant's symptoms given all the available evidence. *Id.* "[T]he ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Mollo v. Barnhart*, 305 F. Supp. 2d 252, 263–64 (E.D.N.Y.2004)

(quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979)). "[I]t is the function of the Commissioner, and not a reviewing court, to pass upon the credibility of witnesses, and to set forth clearly its findings which form the basis for its decision." *Saviano v. Chater*, 956 F. Supp. 1061, 1071 (E.D.N.Y.1997), aff'd, 152 F.3d 920 (2d Cir.1998) (citing *Stupekevich v. Charter*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995)). Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, the ALJ's credibility assessment is entitled to deference. *Tejada*, 167 F.3d at 776. Thus, a "court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain" if her findings are supported by substantial evidence. *Aponte v. Sec'y of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir.1984).

Here, at a hearing before the ALJ on September 4, 2019, Plaintiff testified he had stopped working in May 2018 because of "a nervous breakdown." (Tr. 40-41.) He had worked at his job as a navigator, or patient transporter for 34 years. (*Id.* at 41-42.) While Plaintiff has been suffering from mental health problems since 1984, prior to discontinuing work he began to feel that he "couldn't keep up with the work," that he was "computer illiterate," and could not manage "computer work or writing stuff in, getting my patient, bringing my patient back."

(*Id.*)  Plaintiff lives with his wife and after stopping his job only did work "around the house."  (*Id.* at 40-43.)

Plaintiff's wife of 19 years also testified at the hearing.  (*Id.* at 44.)  She testified that around May 2018, Plaintiff became "more and more agitated. He was showing signs of, you know, withdrawing, some signs of depression, becoming more depressed. I noticed that the job was wearing on him. It was bothering him a lot and his appetite, his appetite became less. He would, you know, like I said, he was more withdrawn." (*Id.* at 45.)  She also testified to plaintiff's concentration and memory, explaining that Plaintiff can become confused from a simple call from the doctor's office, unable to gather certain details and information correctly.  (*Id.* at 46.)  His wife also stated that she had been accompanying Plaintiff to all his doctor's appointments since May 2018 because of his confusion and that work would be difficult because there are certain, simple tasks Plaintiff cannot complete on a daily basis at home. (*Id.* at 51-52.)

In assessing the credibility of the claimant's statements regarding his symptoms, the ALJ must consider the following factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any

medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii). The ALJ will consider whether there are any incongruities between the claimant's statements and the rest of the evidence. *Id.* § 404.1529(c)(4).

The ALJ first found that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms. (Tr. 15-16.) The ALJ then found plaintiff's account of the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent" with the objective medical evidence and other evidence (*id.* at 16), including: Dr. Salon's largely normal physical exam findings (*id.* at 16, 382-85); plaintiff's consistently normal gait throughout Plaintiff's treatment history with only two months of physical therapy (*id.* at 16, 310, 324, 343, 390, 382, 416, 475, 481, 487); a cardiology report showing normal functioning and an echocardiogram showing only mild mitral and aortic regurgitation (*id.* at 17, 531, 636); Dr. Powsner's reports of improvement and stability of psychiatric symptoms with treatment (*id.* at 476, 487, 491, 503); Dr. Frankel's findings that Plaintiff mostly had no limitations in mental capacity, excepting moderate

limitations for sustaining concentration and performing a task at a consistent pace (*id.* at 18, 377-81); and the fact that plaintiff had been able to engage in many activities of daily living (*id.* at 18, 372). Moreover, as noted by the ALJ, Plaintiff was stable on his medications and was seeing Dr. Powsner once a month. (*Id.* at 17, 481.) The ALJ cited record evidence in making her decision, and substantial evidence supports the ALJ's findings; accordingly, this court must uphold the ALJ's decision. *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) ("While it is 'not sufficient for the [ALJ] to make a single, conclusory statement that' the claimant is not credible ..., remand is not required where 'the evidence of record permits us to glean the rationale of an ALJ's decision.'") (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); see, e.g., *Gielarowski for Gielarowski v. Berryhill*, No. 16-cv-3560 (DRH), 2017 WL 4564766 (E.D.N.Y. Oct. 12, 2017); *see also Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010) ("We have no reason to second-guess [a] credibility finding ... where the ALJ identified specific record-based reasons for his ruling.").

## CONCLUSION

The court has reviewed the entire record and finds that the ALJ's determination is free from legal error and supported by substantial evidence in the record. For the

reasons set forth above, the court respectfully denies

plaintiff's motion for judgment on the pleadings and grants the

Commissioner's cross-motion for judgment on the pleadings.  The

Clerk of Court is respectfully directed to enter judgment in

favor of the defendant Commissioner and close this case.

**SO ORDERED.**

Dated:    July 13, 2021
          Brooklyn, New York


                                    _____/s/_____
                                    **HON. KIYO A. MATSUMOTO**
                                    United States District Judge
                                    Eastern District of New York